UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RONALD A., )
 )
       *Plaintiff* )
 )
v. )   No. 2:17-cv-00368-JHR
 )
NANCY A. BERRYHILL, )
*Acting Commissioner of Social Security,* )
 )
       *Defendant* )

### *MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work or, in the alternative, work existing in significant numbers in the national economy. The plaintiff seeks remand on eight bases. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 20) at 5-19.[2] For the reasons that follow, I find no reversible error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, Finding 1, Record at 19; that he had the severe impairment of

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 27.
[2] The plaintiff also separately argues that the errors were not harmless. *See* Statement of Errors at 16-18.

1

degenerative joint disease of the left thumb (status post October 2013 suspensionplasty), Finding 3, *id.*; that he had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he could sit, stand, and/or walk for about six hours in an eight-hour workday, frequently climb ladders, ropes, and scaffolds, frequently crawl, and was limited to occasional handling with the left (non-dominant) hand, Finding 5, *id.* at 23; that he was capable of performing past relevant work as a fast food worker and customer service representative, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 26; that, in the alternative, considering his age (57 years old, defined as an individual closely approaching advanced age, on his alleged disability onset date, October 23, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were other jobs existing in significant numbers in the national economy that he could perform, *id.* at 26-27; and that he, therefore, had not been disabled from October 23, 2013, his alleged onset date of disability, through the date of the decision, May 11, 2016, Finding 7, *id.* at 27-28. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks remand on the bases that the ALJ erred in (i) not associating a prior ALJ decision with the current record, as a result of which she failed to adopt prior findings favorable to him, (ii) deeming his cervical degenerative disc disease nonsevere, (iii) according no weight to the testimony of medical expert Peter Webber, M.D., (iv) giving "strong weight" to the opinions of agency examining consultant Stacie Kunas, FNP-C, countersigned by Alan Bean, M.D., and Margaret A. Morrison, Ph.D., but ignoring FNP Kunas's finding that he required a sit/stand option and Dr. Morrison's opinion that he was prone to verbal altercations, (v) failing to supply good reasons for discounting the opinion of treating source John A. Johnstone, D.O., (vi) ignoring the opinions of treating otolaryngologist John Roediger, M.D., and neurologist David Camenga, M.D., (vii) failing to consider a finding by the United States Department of Veterans Affairs ("VA"), in

3

awarding a non-service-connected pension, that he was totally and permanently disabled, and (viii) misconstruing the testimony of a vocational expert ("VE") in deeming him capable of past relevant work and relying on flawed hypothetical questions to the VE in finding him capable of performing both past relevant work and other work. *See* Statement of Errors at 5-19.

At oral argument, the plaintiff's counsel focused on the third point (rejection of the Webber testimony), the sixth point, insofar as it asserts error in ignoring the Roediger opinion, and the eighth point insofar as it bears on the Roediger and Webber errors. He contended that these errors undermined the ALJ's findings that his client could perform either past relevant work or other work in the national economy. For the reasons that follow, I find no reversible error.

## A. Points Highlighted by Plaintiff's Counsel at Oral Argument

### 1. Past Relevant Work

The ALJ explained that she relied on the testimony of the VE to find the plaintiff capable of performing his past relevant work as a fast food worker and a customer service representative, both as generally performed and as he actually performed them. *See* Record at 26.

At oral argument, the plaintiff's counsel contended that, in response to the hypothetical question most closely tracking the ALJ's RFC determination, the VE ruled out fast food work. *See also* Statement of Errors at 18. Counsel for the commissioner conceded the point but argued that any error was harmless because the ALJ also relied on the plaintiff's ability to perform past relevant work as a telemarketer (*i.e.*, a customer service representative). *See also* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 23) at 19. The plaintiff's counsel rejoined that this finding, as well, is unsupported by substantial evidence because the ALJ ignored evidence to the contrary, including (i) Dr. Roediger's opinion that it was "very doubtful" that the plaintiff could resume work at a call center and (ii) Dr. Webber's testimony that the

4

plaintiff's hoarseness "could well" reoccur if he returned to work that required a lot of talking. Statement of Errors at 10, 13-14 (citations and internal quotation marks omitted). I find no harmful error.

The ALJ deemed the plaintiff's gastroesophageal reflux disease ("GERD") and related laryngitis nonsevere, explaining that, despite his testimony that he would lose his voice for "weeks at a time" if he had to talk for extended periods, the objective record did not confirm any impact on his work-related capability. Record at 21 (citation and internal quotation marks omitted). She noted that the plaintiff had attended speech therapy, had undergone an otolaryngology evaluation in 2011 with Dr. Roediger, and "was assessed with hoarseness due to cigarette smoking and increased hours working at a call-center[,]" but had continued to smoke against medical advice. *Id*.

She further explained that (i) the plaintiff's receipt of a 2012 worker's compensation settlement was not dispositive because the "award specifically denied continuing liability where [the employer] found [the plaintiff's] claims as to vocal dystonia 'doubtful and disputed[,]'" (ii) the plaintiff had spoken clearly throughout his hearing, which lasted more than two hours, and (iii) a gastroscopy performed in November 2013 showed that a previous pyloric ulceration had healed, and the plaintiff was advised to continue acid suppression medications. *Id*. (citations omitted).[3]

The ALJ did not discuss Dr. Roediger's opinion that it was doubtful that the plaintiff could return to work at a call center. *See id*. at 21, 24-26. However, as the commissioner contends, *see* Opposition at 16-17, any error in not addressing that opinion is harmless. The plaintiff does not

---

[3] At oral argument, the plaintiff's counsel took issue with the ALJ's reliance on the characterization of his client's worker's compensation claim as "doubtful and disputed," arguing that the fact that the plaintiff's employer settled the claim was of greater import than its disclaimer of liability. Yet, reasonable minds can disagree as to the import of the settlement, and the ALJ drew a permissible inference that the award was not dispositive in the plaintiff's favor given the quoted language.

5

separately challenge the ALJ's finding that his GERD and laryngitis were nonsevere, *see* Record at 21; Statement of Errors at 5-19, and, in any event, the ALJ identified substantial evidence in support of that finding, including the prominent role played by smoking in causing the condition and the characterization of the plaintiff's claim of vocal dystonia as doubtful and disputed, *see* Record at 21.

While the ALJ did not discuss Dr. Webber's testimony that the plaintiff's laryngitis "could well" recur if the plaintiff were in the same kind of situation, *id*. at 791-92, she adequately addressed his testimony as a whole, explaining that she gave it "no weight" because he had "failed to provide definitive medically determinable impairments or concise physical capacity parameters thereto based upon objective medical data[,]" *id*. at 25.

Indeed, Dr. Webber described no specific limitation on the plaintiff's speech or use of his voice. *See id*. at 791-92, 839-40. He attributed only one limitation to the plaintiff's GERD/laryngitis – a need to avoid bending over if, as a result of acid reflux, doing so would bother him, *see id*. at 839-40. The ALJ deemed this "suggestion" both "wholly inconsistent with the preponderance of medical data, including laboratory tests and physical examinations," and inconsistent with the plaintiff's "evinced level of regular activity such as driving, sitting and standing without evinced limitation, playing with his grandchildren and using a snow blower and lawn mower." *Id*. at 25 (citations omitted). These were adequate reasons to discount it. *See, e.g., Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *4 (D. Me. Jan. 29, 2014) (ALJ did not err in discounting Webber opinion when Dr. Webber had "qualified his testimony several times" and based it in part on claimant's testimony).

### 2. Other Work Existing in Substantial Numbers in the National Economy

The ALJ found, in the alternative, that even if the plaintiff was not capable of performing past relevant work, he remained capable of performing the representative jobs of food service worker (hospital) and dining room attendant, both of which are performed at the medium exertional level. *See* Record at 27.

At oral argument, the plaintiff's counsel contended that this alternative finding is unsupported by substantial evidence because the ALJ ignored Dr. Webber's testimony bearing on the plaintiff's back pain, need for a sit/stand option, inability to bend, and difficulty moving his head as a result of his neck pain. He noted that the VE made clear that either a need for a sit/stand option or an inability to bend would preclude the performance of medium level jobs. *See id*. at 855, 857.

As discussed above, the ALJ supportability discounted Dr. Webber's limitation on bending. She did not address his endorsement of the Kunas sit/stand option. *See id.* at 25, 789. However, as the commissioner argues, *see* Opposition at 10, her general objections that Dr. Webber "failed to provide definitive medically determinable impairments or concise physical capacity parameters thereto based upon objective medical data[,]" *id*. at 25, apply to the sit/stand option, as well.

Dr. Webber testified that, while there was "some evidence of degenerative disc disease of the cervical and the thoracic spine[,]" and the plaintiff "probably ha[d] axial pain from the cervical spine[,]" Record at 842, he could find no diagnostic imaging of record of the plaintiff's lumbosacral spine, *see id*. at 838-39. While Dr. Webber testified that he thought the Kunas sit/stand option "made sense[,]" *id*. at 789, FNP Kunas made clear that she based this limitation on the plaintiff's subjective statements, *see id*. at 462 (noting that examination of the plaintiff's

back revealed "no concerning findings" and that she advised alternating between sitting and standing "[g]iven [the plaintiff's] report of chronic and ongoing low back pain"). In turn, the ALJ gave "strong weight" to the opinion of an agency nonexamining consultant, Donald Trumbull, M.D., who had taken the Kunas report into consideration, thereby effectively adopting his review of it. *Id*. at 25, 67. Dr. Trumbull gave the Kunas report "[g]reat [w]eight" but rejected that portion assessing a need for frequent positional changes, explaining that FNP Kunas had based that limitation on the plaintiff's subjective statements rather than her examination. *Id*. at 67.

Finally, while the ALJ did not specifically address Dr. Webber's testimony concerning possible neck limitations, her rationale for rejecting his opinions *in toto* applies to that testimony, as well. Dr. Webber fairly can be said to have derived those limitations from the plaintiff's subjective statements rather than objective evidence and to have failed to identify precise residual functional capacity parameters. *See id*. at 842 (Webber testimony that, "if [the plaintiff] says he tips his head up and it causes discomfort, it may be right because many people with neuroforaminal narrowing in the cervical spine are actually benefited by looking down and opening up those neural foramina . . . . So I would agree that he has limitations with the use of his neck to a degree.").

Remand, hence, is unwarranted on the basis of the points of error highlighted by the plaintiff's counsel at oral argument. For the reasons discussed below, remand also is unwarranted on the basis of the remaining points of error.

### B. Other Points of Error

#### 1. Failure To Associate File From Prior ALJ Decision

The plaintiff cites the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-6-58 and caselaw from other jurisdictions for the proposition that the ALJ erred in failing to associate the file from a prior ALJ decision with the current record, as

a result of which she failed to adopt prior ALJ findings that were more favorable to him. *See* Statement of Errors at 5-7 (citing, *inter alia*, *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988*); Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987)).

While the cited HALLEX provision does require that ALJs associate a prior ALJ decision with a current claim file, it notes that doing so "is especially critical to comply with" Acquiescence Rulings relating to decisions of the United States Courts of Appeals for the Fourth, Sixth, and Ninth Circuits, including *Drummond*, *Chavez*, and *Lively*. *See* HALLEX § I-2-6-58(B). *Drummond*, *Chavez*, and *Lively* all hold that, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond*, 126 F.3d at 842; *see also Chavez*, 844 F.2d at 693-94; *Lively*, 820 F.2d at 1392. This court has declined to embrace that holding, noting that it "represents a departure from the commissioner's established policy that when a claimant files a new application covering a new time frame, the issues (including RFC) are to be examined *de novo*." *Frost v. Barnhart*, No. 03-215-P-H, 2004 WL 1529286, at *3 (D. Me. May 7, 2004) (rec. dec., *aff'd* June 3, 2004).

The plaintiff observes that this court cited *Drummond* with favor in *Staples v. Colvin*, No. 2:15-cv-392-DBH, 2016 WL 4146083, at *2 (D. Me. Aug. 3, 2016) (rec. dec., *aff'd* Oct. 6, 2016), as did the United States District Court for the District of Massachusetts in *Mantilla v. Colvin*, Civil Action No. 15-11913-FDS, 2016 WL 3882838, at *5-6 (D. Mass. July 13, 2016). *See* Statement of Errors at 6 n.2. *Staples* is distinguishable, however, in that it concerned the propriety of findings on remand in the same case, not a prior one. *See Staples*, 2016 WL 4146083, at *2; *see also, e.g., Day v. Berryhill*, No. 1:16-00593-JAW, 2017 WL 5037454, at *3 n.2 (D. Me. Nov. 2, 2017) (rec. dec., *aff'd* Nov. 20, 2017) (distinguishing *Staples* on the same basis).

9

While the *Mantilla* court did apply *Drummond*, *Chavez*, and *Lively*, it did so in circumstances in which an ALJ in a second case determined, without finding any improvement in a claimant's condition, that the ALJ in the first case had wrongly limited the claimant to sedentary work. *See Mantilla*, 2016 WL 3882838, at *6 (noting that the "later ALJ could not overturn that [prior] decision"). The ALJ in this case made a *de novo* determination. *See* Record at 17-18.

The ALJ's error in failing to associate the prior ALJ decision with this claim, accordingly, is harmless.

### 2. Failure To Find Severe Impairment of Cervical Degenerative Disc Disease

The plaintiff contends that the ALJ erred in failing to find a severe impairment of cervical degenerative disc disease, both on the record before her and because she failed to adopt the finding of the prior ALJ that the impairment was severe. *See* Statement of Errors at 7-8. The latter point founders for the reasons discussed above, and I find no error in the ALJ's determination of nonseverity on the record before her.

As concerns shoulder pain, the plaintiff testified at hearing that his shoulder condition had resolved after six or seven months, *see* Record at 806-07, and his counsel conceded that he could not meet the one-year duration requirement as to that condition, *see id.* at 785; 20 C.F.R. § 404.1509.

As concerns neck pain, the ALJ identified substantial evidence in support of her finding of nonseverity in the form of normal findings on physical examination by FNP Kunas on September 30, 2014, *see* Record at 20, 461-62, the October 28, 2014, opinion of Dr. Trumbull that the plaintiff's only physical limitations stemmed from his left thumb impairment, *see id.* at 25, 67-69, and her observation that October 2015 imaging of the cervical spine unseen by Dr. Trumbull revealed no significant progression compared with images obtained in 2012, *see id.* at 20, 613.

In any event, even if the ALJ erred in deeming the impairment nonsevere, the plaintiff fails to explain how the error could have been outcome-determinative. *See* Statement of Errors at 7-8; *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

Remand, accordingly, is unwarranted on the basis of this point of error.

### 3. Error in Weighing Kunas, Morrison Opinions

The plaintiff next asserts that the ALJ erred in giving "strong weight" to the opinions of FNP Kunas and Dr. Morrison without explaining why she failed to adopt FNP Kunas's sit/stand option or Dr. Morrison's opinion that the plaintiff was prone to verbal altercations. *See* Statement of Errors at 10-12; Record at 25, 462-63, 455. She cites *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *5 (D. Me. Sept. 19, 2016), for the proposition that an ALJ must adopt an expert opinion in its entirety or explain why he or she did not do so. *See* Statement of Errors at 11. As the commissioner rejoins, *see* Opposition at 11-14, any error is harmless.

While the ALJ did not address the Kunas sit/stand option, her decision as a whole makes clear that she discounted it, allowing the court to conclude that she "reached a supportable result *via* an acceptable analytical pathway," *Picard v. Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681, at *3 (D. Me. Mar. 16, 2018).

At Step 2, she found that the plaintiff had no severe lumbosacral spine impairment, noting that there were no objective findings of record establishing any "persistent impediment of the lumbosacral spine" and that, on examination, FNP Kunas found "no problems with gait, nor musculoskeletal weakness and no indication of neural involvement," with the plaintiff "exhibiting a full range of motion in both the spine and extremities without noted abnormalities, swelling or

11

tenderness." Record at 20 (citations omitted). The plaintiff has not challenged this Step 2 finding, *see* Statement of Errors at 5-19, a waiver that the commissioner correctly notes undermines his assertion that the ALJ erred in failing to assess a sit/stand option, *see* Opposition at 11.

In any event, as noted above, at Step 4 the ALJ adopted the RFC opinion of Dr. Trumbull, who rejected FNP Kunas's suggested postural limitations because they were based on the plaintiff's self-report. *See* Record at 20, 67. That distinguishes this case from *Parker*, in which the agency nonexamining consultant whose opinion the ALJ adopted had neither captured all of the agency examining consultant's findings nor explained why he did not, despite indicating that he gave those findings great weight. *Compare Parker*, 2016 WL 4994997, at *5.

The ALJ, thus, supportably discounted the need for a sit/stand option.

The plaintiff next complains that the ALJ overlooked Dr. Morrison's statement that, due to his "fair degree of suspiciousness of others[,]" it was "entirely possible that he could be 'triggered' by the behavior of someone else, which would result in some kind of verbal altercation." Statement of Errors at 11 (quoting Record at 455). He concedes that Dr. Morrison did not assess a specific limitation in his social functioning; however, he asserts that her statement detracts from the ALJ's finding that he had only mild limitations in social functioning and no associated functional limitations. *See id.*

Nevertheless, as the commissioner observes, *see* Opposition at 14, an ALJ need not adopt an agency examining consultant's equivocal statement that may or may not translate into a work-related limitation. Dr. Morrison prefaced the statement at issue with the more definitive finding that the plaintiff was "not likely to have difficulties behaving in an emotionally stable manner[,]" and she did not translate it into a specific workplace limitation. Record at 455; *Purdy v. Colvin*, No. 1:15-cv-330-JDL, 2016 WL 2770520, at *3-4 (D. Me. May 13, 2016) (rec. dec., *aff'd* Sept.

13, 2016), *aff'd*, 887 F.3d 7 (1st Cir. 2018) (rejecting argument that ALJ gave short shrift to opinion of examining consultant that "it would be difficult for the [claimant] to carry any weight due to her knee problems" when that sentence could not be "translated into a specific limitation, much less a prohibition on lifting altogether") (citations omitted). Moreover, the ALJ adopted the opinion of agency nonexamining consultant Brian Stahl, Ph.D., who noted Dr. Morrison's finding that the plaintiff could be distrustful of others but assessed only a mild limitation in social functioning. *See* Record at 25, 64-65.

Remand, accordingly, is unwarranted on the basis of this point of error.

### 4. Error in Rejecting Opinion of Dr. Johnstone

The plaintiff next argues that the ALJ improperly rejected the opinion of Dr. Johnstone, a VA treating source, without supplying the requisite good reason(s) for doing so. *See* Statement of Errors at 12-13; 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").[4] I find no error.

On May 7, 2015, Dr. Johnstone completed a physical RFC questionnaire indicating that it "would be preferable" for the plaintiff to have a job permitting shifting positions at will from sitting, standing, or walking and that he could never crouch/squat or climb ladders, could rarely stoop (bend), and could occasionally twist and climb stairs. Record at 477-78. He left most of the other portions of the questionnaire blank, stating that he did not evaluate the plaintiff with respect to those issues. *See id*. at 476-78. He explained that he had seen the plaintiff only once, on March

---

[4] I quote from the regulation in effect at the time of the issuance of the ALJ's decision. *See* Record at 28. That regulation was superseded as to claims filed on or after March 27, 2017, by 20 C.F.R. § 404.1520c, pursuant to which the commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 404.1520c.

13

27, 2015, had not performed an RFC examination of him, and had answered the questions he could based on the examination that he did perform. *See id*. at 479.

The ALJ stated that she could not accord the Johnstone opinion "serious consideration[,]" noting that Dr. Johnstone had seen the plaintiff only once when he completed the form and had not performed an RFC examination of him. *Id*. at 25. She added, "Moreover, a treating physician's opinion is given controlling weight only when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. at 25-26 (citation omitted).

The plaintiff cites *Johnson v. Astrue*, 597 F.3d 409, 411 (1st Cir. 2010), for the proposition that, while the length of a treating relationship is relevant, the standard is whether a physician has seen a claimant with sufficient frequency to form a valid opinion. *See* Statement of Errors at 12. He asserts that because Dr. Johnstone had access to his full medical history at the VA and completed only those portions of the questionnaire that he was able to complete based on his own examination, the ALJ erroneously discounted his opinion based on length of treatment relationship alone. *See id*. at 12-13. He discounts the ALJ's observations regarding the supportability and consistency of medical opinions with other evidence of record on the basis that she made no findings demonstrating that Dr. Johnstone's opinions lacked such support or were inconsistent with other substantial evidence. *See id*. at 13.

As the commissioner points out, *see* Opposition at 15, Dr. Johnstone does not appear to have accessed the plaintiff's prior VA records. He stated: "Will need to use medical record notes as to any issues before I saw patient." Record at 479. To that degree, his opinion lacked support. Finally, Dr. Johnstone himself emphasized that he had seen the plaintiff only once, mentioning that fact three times, and that he had not performed an RFC examination of him. *See id*. at 475,

14

479. The ALJ reasonably could have viewed this as calling into question the degree to which Dr. Johnstone could offer an informed opinion even with respect to the few questions that he felt comfortable answering. *See, e.g., Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426, at *3 n.5 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017) (distinguishing *Johnson* when ALJ reasonably could have concluded that treating physician's own statements, as well as timing and relatively short length of treating relationship, called into question the degree to which the treating physician could offer an informed opinion about the plaintiff's mental capabilities as of her date last insured).

Finally, and in any event, the ALJ adequately signaled that she relied not only on the length of the treatment relationship but also on lack of support for the Johnstone opinion and its inconsistency with other substantial evidence of record. *See* Record at 25-26. She alluded to findings made elsewhere in her decision; for example, her finding that the plaintiff had no severe lumbosacral back impairment. *See id*. at 20.

In sum, the ALJ considered and offered good reasons for her handling of the Johnstone opinion. No more was required. *See, e.g.*, 20 C.F.R. § 1527(c).[5]

### 5. Error in Ignoring the Opinion of Dr. Camenga

The plaintiff next asserts that the ALJ erred in ignoring the opinion of his treating neurologist, Dr. Camenga, who diagnosed abdominal migraines, that it was "unlikely [the plaintiff could] work in competitive employment." Statement of Errors at 14 (quoting Record at 736).

---

[5] The plaintiff elsewhere asserts that the ALJ erred in failing to incorporate Dr. Johnstone's separate recommendation that the plaintiff "avoid any weight lifting involving the neck/upper back." Statement of Errors at 1, 16 (quoting Record at 516). This limitation was assessed by a VA nurse practitioner, not Dr. Johnstone. *See* Record at 515-17. More importantly, the limitation was assessed in response to the plaintiff's complaint of increased shoulder pain, *see* Record at 515-16, which his counsel has acknowledged did not meet the 12-month duration requirement, *see id*. at 785.

15

As the commissioner argues, *see* Opposition at 17, any error is harmless. The ALJ relied on the opinion of Dr. Trumbull, *see id*. at 25, who found no medically determinable impairment of abdominal migraines and declined to adopt the Camenga opinion, *see id*. at 67 (notation by Dr. Trumbull that he found "[n]o evidence to support migraines as severe or a relation to exacerbation related to stress" and "[n]o treatment records to support this allegation").

### 6. Failure To Consider VA Award

The plaintiff next contends that the ALJ erred in ignoring a finding by the VA that he qualified for a non-service-connected ("NSC") pension on the basis of total and permanent disability. *See* Statement of Errors at 14-16. As the commissioner rejoins, *see* Opposition at 18-19, this argument is predicated on a mistaken premise. The VA did not grant the pension in question based on total and permanent disability but, rather, its mistaken belief that the plaintiff was "[i]n receipt of disability Social Security benefits." *Id*. at 18 (quoting Record at 723). The VA later found that the plaintiff was not entitled to a permanent and total rating for NCS (non-service-connected) pension purposes. *See id*. at 729-31.

### 7. Misplaced Reliance on VE Testimony

The plaintiff, lastly, argues that remand is warranted based on the inaccuracy of the ALJ's RFC determination, which undermined her reliance on VE testimony predicated on that inaccurate RFC to find him capable of performing both his past relevant work and other jobs existing in substantial numbers in the national economy. *See* Statement of Errors at 18-19; *Arocho v. Sec'y of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).[6]

---

[6] The plaintiff also separately argues that the substantive errors he identifies are not harmless because the ignored limitations collectively preclude all of the jobs on which the ALJ relied at Steps 4 and 5 to find him nondisabled. *See*

16

Because I find no basis on which to disturb the ALJ's RFC determination, this point of error also is unavailing.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 24th day of March, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

Statement of Errors at 17 (arguing that omitted limitations of light-level work, a need to avoid any weight-lifting involving the neck/upper back, a need for a sit/stand option, restricted social functioning, a preclusion from crouching and squatting, rare stooping, occasional twisting and stair climbing, and no prolonged speaking are incompatible with the demands of those jobs). For the reasons discussed above, the ALJ did not err in omitting these limitations.